UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

BEPCO, L.P.                                    CIVIL ACTION NO. 11-0132

VERSUS                                         U.S. DISTRICT JUDGE DEE D. DRELL

SANTA FE MINERALS, INC.,
        et al                                  U.S. MAGISTRATE JUDGE JAMES D. KIRK


REPORT AND RECOMMENDATION

Before the court is plaintiff's motion to remand, **doc. #78**, and defendant's motion to strike,

**doc. #161**, both referred to me by the district judge.

This suit's background, according to plaintiffs

Suit was filed in state court in Avoyelles Parish in 2005 by landowners (the Tebow plaintiffs)

against BEPCO and Santa Fe Minerals, Inc. (hereinafter sometimes Santa Fe and sometimes "the

GSF entities" which includes it's then parent company, Global Santa Fe). The landowners claimed

that water containing dangerous materials produced from oil wells was disposed of in pits on their

property and that the water contaminated the land and the ground water, including a drinking water

aquifer on their property. BEPCO asserted indemnity and contribution claims against Santa Fe.

BEPCO alleges that Santa Fe discovered that it was far more likely to be cast in judgment than

BEPCO and it filed for bankruptcy protection. BEPCO moved to dismiss the bankruptcy proceeding.

Then, during trial of the Tebow case, BEPCO settled the case with the landowners and agreed to pay

$20 million dollars in damages and to assist in cleanup operations. BEPCO alleges that Santa Fe was

able to avoid participating in the trial by having filed the bankruptcy petition.

BEPCO then filed suit in Avoyelles Parish against Santa Fe and its insurers, most of which

were named as "Certain Underwriters at Lloyd's London and London Market Companies, foreign insurers, subscribing to the policies insuring Andover Oil Company, Santa Fe-Andover Oil Company, and/or Santa Fe minerals, Inc. for the years 1964-1990". By amending petition, BEPCO specifically named those entities whose names it had learned[1].

Following the expenditure of enormous amounts of money, BEPCO succeeded in having the Santa Fe bankruptcy proceeding dismissed for lack of good faith, by order of a federal court in Delaware, as affirmed by the U. S. 3rd Circuit Court of Appeals. Plaintiffs allege that the court dismissed the proceeding concluding that it had been filed as a litigation tactic so that it could avoid liability in the Tebow case. The Delaware bankruptcy court sanctioned the GSF companies 1.6 million dollars, representing BEPCO's legal expenses, which were paid without appeal. The bankruptcy court found that the GSF entities abused the bankruptcy process and it termed the GSF entities conduct "vexatious, aggressive litigation tactics", according to plaintiffs.

Undeterred, the GSF companies, plaintiffs allege, then filed suit in Harris County Texas seeking a declaratory action on the very same issues pending in Avoyelles Parish. The bankruptcy court called the filing "more . . . gamesmanship with the judicial system." The Texas court stayed its proceedings pending resolution of the Avoyelles Parish suit.

As BEPCO prepared to finally proceed against Santa Fe, Santa Fe filed cross claims and third party demands against over 80 insurers who are alleged to have issued policies over the many years oil producing operations had been performed on the properties. One of those entities is ICAROM, formerly the Insurance Company of Ireland, whom Santa Fe alleged in its third party

---

[1]  The amending petition specifically listed policy JHB-CJP-441, which will be discussed infra.

2

demand is liable to it under policy number T11669[2].

<u>The instant motion to remand</u>

Within 30 days of service of the cross claim and third party demand on it, ICAROM removed the case to this court asserting that it is a foreign state as defined by the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §1603, and that removal is proper under 28 U.S.C. §1441(d). Both Santa Fe and ICAROM then filed a motion to dismiss which, plaintiffs allege, raises the identical arguments previously disposed of by Judge Bennett in Avoyelles Parish.

Within 30 days of the removal, BEPCO filed the instant motion to remand on the following grounds:

1) That the addition of ICAROM as a defendant was improper or collusive under 28 U.S.C. §1359 because, among other things, the policy sued upon, T11669, is a builders risk policy and provides insurance only on property and equipment and thus has nothing whatsoever to do with the claims made by BEPCO in this case, and

2) That the policy, T11669, contains a "service of suit clause" by which ICAROM waived its right to remove the case to federal court.

Because ICAROM argued the applicability of an additional policy, JHB-CJP-441, in its opposition brief, plaintiff BEPCO, in its reply brief, asserts a third ground for remand: untimeliness of the removal. ICAROM has filed a motion to strike that argument by BEPCO.

<u>Improper or collusive joinder in order to create federal jurisdiction.</u>

BEPCO alleges that Santa Fe and ICAROM colluded to create federal jurisdiction and avoid the fast approaching trial in state court. It suggests that Santa Fe added ICAROM as a third party

---

[2]  See exhibit C of doc. #1.

defendant years after it knew or should have known that ICAROM provided coverage as a subscriber to a Lloyds or London Market  policy, knowing that ICAROM would remove the case to this court. Plaintiff  BEPCO also points to the fact that the policy sued on by Santa Fe, T11669, is a builders risk policy and only  insures property and equipment and does not provide coverage for the kinds of claims set forth in this suit. BEPCO also points to the fact that Santa Fe immediately filed a motion to dismiss in this court seeking to relitigate issues already ruled upon by Judge Bennett.

ICAROM's attorney, in oral argument on these motions, vehemently denied involvement in collusion.

Against the history of what has occurred in this case and the Tebow litigation, BEPCO's suspicions, supported by circumstantial evidence, are understandable and, indeed, reasonable. Yet, as counsel admitted at argument, there exists at this point no direct evidence of collusion or of the improper naming of ICAROM as a defendant. Certainly the naming of a wholly irrelevant insurer would likely satisfy the requirements of the statute, 28 U.S.C. §1359 as might the circumstantial evidence presented by BEPCO.  However, in view of the Recommendation on other issues in regard to the motion to remand, this court need not consider the coverage issue regarding policy T11669 or otherwise decide whether collusion or improper joinder has occurred.[3]

The Service of Suit Clause.

Policy T11669 contains the following clause:

2. SERVICE OF SUIT CLAUSE (USA): It is agreed that in the event of the failure of

---

[3]  Should facts developed later demonstrate that collusion or improper joinder within the meaning of 28 U.S.C.§1359 occurred, both the state court and this court have the authority to take appropriate steps to remedy it at that time.

Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Assured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

BEPCO asserts that the clause serves as a waiver of the insurer's right to remove a case to federal court. In support, BEPCO cites, among other cases, Capital Bank & Trust Co. v. Associated International Ins. Co., 576 F. Supp. 1522 (M.D. La. 1984); Tennessee Gas Pipeline Co. v. Continental Casualty Co., et al., 814 F. Supp. 1302 (M.D. La. 1993); Murphy Oil USA, Inc. v. U. S. Fidelity & Guaranty Co., et al., 1992 WL 465701 (W.D. Ark. 1992); City of Rose City v. Nutmeg Ins. Co., 931 F.2d 13 (5th Cir. 1991); and International Insurance Company v. McDermott Inc., 956 F.2d 93 (5th Cir. 1992) (McDermott II).

As a preliminary matter, ICAROM argues that BEPCO has no standing to argue that Santa Fe's insurer waived its right to removal suggesting that, properly construed, the clause reserves to the *insured* the right to raise the defense.  While recognizing there is no authority on this issue, ICAROM shows that the Fifth Circuit has recognized that the clause " . . . gives to the *policyholder* the right to select the forum . . . ."  Ergo, a third party like BEPCO does not have the right.

What ICAROM overlooks, however, is the fact that in this case, the *policyholder,* Santa Fe, did select the forum–Avoyelles Parish. It is ICAROM, the *insurer*, which wishes to substitute its choice for that of its insured. BEPCO's invoking of the clause is entirely consistent with the policyholder's right to choose the forum pursuant to the service of suit clause. I find, therefore, that BEPCO has standing to argue the applicability of the waiver under the clause.

The cases cited by plaintiff support a finding that ICAROM has waived its right to remove by inclusion of the service of suit clause in its policy. Capital Bank is the seminal case in a line of cases analyzing waiver under the clause and ultimately concluding that the clause does provide for a waiver of the right to remove. In Capital Bank, Judge Polozola considered a service of suit clause virtually identical to the one at issue here. After observing that any waiver of the right to remove must be clear and unambiguous he held that the clause in question served as a waiver of the insurer's right to remove.

In Nutmeg, the Fifth Circuit had occasion to consider a clause substantially identical to the one in Capital Bank. Citing Capital Bank, and following its holding, the Fifth Circuit held that the clause served as a waiver of the insurer's right to remove to federal court.

In McDermott II, the Fifth Circuit reaffirmed its prior ruling in Nutmeg.

In Murphy Oil, a case in which ICAROM was a party represented by the same law firm which represents it in this case, a more or less identical service of suit clause was at issue. It was also a case which involved the FSIA. The Arkansas federal court noted that a waiver must be express and unequivocal as Judge Polozola and the Fifth Circuit had previously held. It also held that ICAROM had failed to prove it was a foreign state under the FSIA and, following Nutmeg and Capital Bank, held that the clause at issue was unambiguous and constituted a waiver of ICAROM's right to remove.

Judge Polozola's decision in Tennessee Gas also involved ICAROM and an identical service of suit clause. Deciding he need not resolve the "serious legal and factual issues regarding ICAROM's status as a foreign sovereign", and relying on his prior decision in Capital Bank and on Nutmeg, the court reaffirmed its prior holding that the service of suit clause served to waive the

insurer's right to remove to federal court. The court held that the fact that ICAROM  "may enjoy foreign sovereign status [under the FSIA] " does not mean it cannot be held to have waived its right to removal. The judge noted that the "court fails to see how otherwise clear language in a policy becomes ambiguous or meaningless simply because one party is a foreign sovereign. The phrase "submit to the jurisdiction of any court" should be given the same interpretation irrespective of the parties' identity."

In a brief that contains language that is disrespectful, the lawyer representing ICAROM, Mr. Hall, suggests that BEPCO relies on "a few inapposite and/or misguided district court opinions", choosing to overlook the Fifth Circuit authority on which BEPCO relies, which in turn follow those "misguided" district court opinions.  Instead, ICAROM relies on McDermott International, Inc. v. Lloyd's Underwriters of London 944 F.2d 1199 (5th Cir. 1991) (McDermott I), Ensco International, Inc., v. Certain Underwriters at Lloyd's, 579 F.3d 442 (5th Cir. 2009), and cases from other circuits as supporting ICAROM's argument that it has not waived the right to remove the case.

While the cases from other circuits might be instructive were there no Fifth Circuit authority on point, here we have a body of law within our circuit on which to rely.

In McDermott I, the Fifth Circuit again was confronted with a service of suit clause which is more or less identical to those at issue here and in Capital Bank and Nutmeg. Because the case involved an arbitration clause governed by the Convention Act, 9 U.S.C §202, the court held that its prior decision in Nutmeg was not controlling. Specifically, the court noted that the arbitration clause was itself a co-equal choice of forum clause and thus only an explicit or express waiver would be held to waive the insurer's  removal rights.

In Ensco, the Fifth Circuit went to great lengths to explain its holding in McDermott I. Ensco

7

was also a Convention Act case but, unlike McDermott I, contained a clause granting exclusive jurisdiction to the Dallas County courts. The Ensco court noted that McDermott I did not hold that only where there is an express waiver is removability foreclosed, but rather that other bases for waiver, as set forth in City of New Orleans v. Mun. Admin. Servs., Inc., 376 F.3d 504 (5th Cir. 2004) (venue provisions), were simply not applicable there. Indeed, contrary to ICAROM's argument, the court held that the McDermott court had used the terms "express", "explicit", "unambiguous" and "clear and unequivocal" almost interchangeably. It concluded that "[a]lthough waiver must be clear and unequivocal, it may be implicit where necessary to give effect to all contractual provisions". Therefore, unlike McDermott I, remand was granted despite the fact it was a Convention Act case.

ICAROM argues that this court should require an express waiver of the right to remove as in McDermott I.

As noted above, McDermott I involved "co-equal" forum selection clauses which created ambiguity requiring a more clear expression of intent to waive the right to remove. Such is not the situation in this case. Therefore, the need for a more express waiver is less compelling here. In the circumstances of this case, where a co-equal forum selection clause is not present, the service of suit clause is clear and unambiguous or express, as held by Judge Polozola in Capital Bank and in Tennessee Gas.

ICAROM , however, points to the Fifth Circuit's approving reference in McDermott  I  to the Sixth Circuit's decision in In re Delta America Re Ins. Co., 900 F.2d 890 (6th Cir. 1990) which involved the FSIA. In enumerating the reasons that only an express waiver would do in Convention Act cases, the McDermott I court quoted the Sixth Circuit's statement that the FSIA's purpose would best be served by "the development of a uniform body of [FSIA] law" in federal court. The

McDermott I court found that reasoning persuasive and applicable to cases like McDermott I involving the Convention Act.

Nevertheless, the Fifth Circuit has not addressed whether to extend the McDermott I ruling to FSIA cases and, in view of the McDermott I court's reasoning, which is seemingly unique to Convention Act cases and when co-equal clauses are present, I cannot say that it is clear that the court would necessarily extend McDermott I to FSIA cases in this Circuit. Instead, I follow Judge Polozola's reasoning and conclusion in Tennessee Gas[4] and find the Capital Bank,-Nutmeg-McDermott II-Murphy Oil line of cases to be the appropriate analysis and result in FSIA cases presenting the service of suit clause at issue here.

Therefore, even if ICAROM were determined to be a foreign state under FSIA, I find the service of suit clause to be clear and unequivocal in the context of this policy and the facts of this case and to serve as a waiver of ICAROM's right  to remove the case.

Policy JHB-CJP-441 and its service of suit clause

The London subscribers to policies insuring Santa Fe were sued by BEPCO in its  original petition. By amending petition, BEPCO specifically identified the policy JHB-CJP-441  as being one which  might provide coverage, although BEPCO did not know who the subscribers were. Service of the original petition was requested through Mendes and Mount, the agent and through the Louisiana Secretary of State.[5] BEPCO asserts that it engaged in extensive discovery with Santa Fe

---

[4]  Inexplicably, ICAROM's counsel states at page 15 of his opposition brief that Judge Polozola did not analyze McDermott I in Tennessee Gas. The claim was repeated at oral argument and is patently false. See Tennessee Gas  814 F. Supp. at 1308. Judge Polozola explained why he found McDermott I to be inapplicable.

[5]  See LSA-R.S. 22:335 requiring foreign insurers to name the Secy. of State as agent for service of process.

in order to learn the identity of the policies and the subscribers to them, without success. Yet, after Santa Fe sued ICAROM on policy T11669,(which proves Santa Fe knew or at least learned at some point of the identity of ICAROM as a subscriber to policy T11669) and as soon as BEPCO made its compelling argument that ICAROM waived its right to remove in policy T11669, ICAROM immediately admitted for the first time, in its opposition brief to the motion to remand, that it is also a subscriber to the policy named in the amending petition by BEPCO, policy JHB-CJP-441 (hereinafter "the 441 policy" or "policy 441"). In its opposition brief ICAROM then argues that the 441 policy contains a service of suit clause which, it argues, only restricts its right to removal of cases filed in California. Therefore, it reasons, it has a right under the 441 policy to remove this case to this court.

Following receipt of the opposition brief, BEPCO then argued in its reply brief that removal on the basis of the 441 policy comes too late, because the subscribers to it were served through their agents over two years ago. In response, ICAROM filed a motion to strike arguing that the new argument by BEPCO on its motion to remand was itself filed too late, that is, not within 30 days of the removal.

### a)  The motion to strike

ICAROM argues that, despite the fact it first identified itself as a subscriber to the 441 policy and argued it as a ground for removal in its opposition brief, BEPCO should be precluded from defending itself from  that argument. BEPCO, on the other hand, argues that the assertion of the additional ground for remand was procedurally proper under Tennessee Gas. BEPCO is correct. This issue was addressed and decided in Tennessee Gas where the court held that as long as the motion to remand on procedural grounds is filed within the 30 day period, the court may determine all

10

procedural defects which are raised even by argument  while the motion to remand is pending.[6]

ICAROM's cases are inapposite.  Lunsford v. Cemex, Inc., 733 F. Supp 2d 652 (M. D. N. C. 2010) involved a procedural defect which was never raised except by sua sponte motion of the Magistrate Judge. Further, the Fifth Circuit case it cites, Denman v. Snapper, 131 F.3d 546 (5th Cir. 1998), involved the failure to make the correct legal argument as to remand at all, not a late made argument. Holguin v. Albertson's LLC, 530 F. Supp. 2d 874 (W. D. Tex. 2008), incorrectly relied on Davis v. Ciba-Geigy, cited below at footnote 7 as support for holding that "[f]ailure to timely challenge a procedural defect in a notice of removal constitutes a waiver, even where a timely motion for remand has been filed." As explained below, that is true only where the motion to remand is filed based not on a procedural defect, but rather on subject matter jurisdiction.  See 28 U.S.C. §1447(c). Holguin also relied on FDIC v. Loyd, 955 Fed.2d 316 (5th Cir. 1992). Loyd, however, involved a sua sponte dismissal by a judge after 30 days. It did not involve consideration of additional procedural grounds for remand after a timely motion to remand based on procedural grounds had been filed. Finally, Barnes v. Westinghouse Elec. Corp., 962 Fed.2d 513 (5th Cir. 1992), involved a denial of a motion to remand and an attempt to request a rehearing over a year later.

The motion to strike should be denied.[7]

---

[6] Filing a motion to remand solely on the basis of subject matter jurisdiction, however, does not preserve the ability to amend to argue remand based on procedural defect. Davis v. Ciba-Geigy Corp., 958 F. Supp. 264 (M.D. La. 1997); see 28 U.S.C. §1447(c).

[7] Even if the court were to disagree with the Tennessee Gas holding, the remand argument would still be timely based on FRCP 6(b), "excusable neglect". "The 'excusable neglect' standard is an equitable determination that must take into account all relevant circumstances surrounding the party's omission." See Morin v. Target Corp., 2009 WL 2704092 (N.D. Illinois).
    In addition, it would be appropriate to apply equitable estoppel in the unique circumstances of this case. Otherwise, ICAROM would be allowed to raise a new argument in its opposition brief, the timeliness of which could not be contested. See In re Shell Oil Co. et al, 932 Fed2d 1523 (5th Cir.

b) Is removal based on the 441 policy timely?

Policy 441 provides two service of suit clauses, both of which provide for service of process through its agent, Mendes and Mount. The original petition was  served on Mendes and Mount. The supplemental and amending petition also requested service of process on Mendes and Mount and specifically listed policy 441. According to the affidavits of service in the record, both petitions were served on Mendes and Mount. In addition, service was also requested through the Louisiana Secretary of State which is also an agent for service of process. LSA-R.S. 22: 335 However, there is no evidence of record that service was also accomplished through the Louisiana Secretary of State.

ICAROM contends that it was unaware it was a defendant until it was served by Santa Fe with the third party demand. Regardless, service was accomplished in precisely the manner set forth in the policy to which ICAROM subscribed; ICAROM will not be heard to complain that such service was inadequate.  Upon service on the agent, Mendes and Mount, it was up to the agent or its client to determine  what insurers subscribed to the policy 441. Luce v. Lloyd's of London, 868 Fed. Supp. 625 (D. Vermont 1994) . Upon service, the clock began to tick for removal. Therefore, the removal is untimely. Good cause does not exist to enlarge the time now, some two years later.

In addition, even had the removal not been untimely, the second service of suit clause[8] in the 441 policy is identical to that in the T11669 policy discussed above and, for the reasons stated above, serves as a waiver of the right to remove.

----

1991).

[8]  The first clause arguably restricts removal only as to cases filed in California. The second, found in the policy filed and submitted to the court by Santa Fe at doc. #134, Exhibit I, at page 45, is identical to the one in the T11669 policy.

For the foregoing reasons, IT IS RECOMMENDED that the motion to strike, **doc. #161**, be DENIED and that the motion to remand, **doc. # 78**,  be GRANTED and that this case be remanded to the 12th Judicial District Court, Avoyelles Parish, Louisiana.

IT IS FURTHER RECOMMENDED that the penalties and attorney fees issue be pretermitted and that this court retain jurisdiction over the penalties and attorney fees issue as well as the issue of sanctions for the purpose of considering those issues in the event it is later shown that collusion or improper removal under 28 U.S.C. 1359 occurred.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed.  Providing a courtesy copy of the objection tot he magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this 25th day of April, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE